NATIONAL FACTORS, INC., Plaintiff, *v.* LILLIAN B. WINSLOW, as Executrix of CHARLES YORASCHEK, Deceased, Defendant.

Supreme Court, Special Term, New York County, October 28, 1966.

*Hyman Bettigole* and *Harry K. Nadell* for plaintiff. *Speckels, Byrnes & Dillon* (*William A. Speckels* of counsel), for defendant.

NATHANIEL T. HELMAN, J. In this action plaintiff seeks to recover $10,000 in abatement of the purchase price of certain real property, purchased from defendant. The purchase price of the property was $180,000 for the land and buildings thereon. Prior to title closing, a fire occurred in one of the buildings, and defendant accepted $10,000 in settlement of its insurance claim ($9,000, net, having been received after payment of a $1,000 adjuster's fee). The contract stated:

" NOTE: FIRE LOSSES. This form of contract contains no express provision as to risk of loss by fire or other casualty before delivery of the deed. Unless express provision is made, the provisions of Section 240-a of the Real Property Law will apply. This section also places risk of loss upon purchaser if title or possession is transferred prior to closing." At the date of title closing, there was no agreement reached as to the party entitled to the insurance proceeds, but title closed nonetheless; the parties executing a stipulation providing that:

" The matter of the proceeds of the fire loss on the property described in the contract * * * is left open for determination.

" It is specifically understood and agreed that any of the rights that the parties may have had prior to the closing are not waived." Section 240-a of the Real Property Law (now General Obligations Law, § 5–1311, modeled after, and still sometimes known as the " Uniform Vendor and Purchaser Risk Act ") provides that contracts for the sale of realty, unless containing an

express provision to the contrary, "shall be interpreted * * * as including an agreement that

"(1) if all or a material part [of the property] * * * is destroyed without fault of the purchaser * * * the vendor cannot enforce the contract, and the purchaser is entitled to recover any portion of the price that he has paid * * *

"(2) if an immaterial part thereof is destroyed without fault of the purchaser * * *, neither the vendor nor the purchaser is thereby deprived of the right to enforce the contract; but there shall be, to the extent of the destruction or taking, an abatement of the purchase price."

It seems evident, on the papers submitted that the instant loss falls within the scope of those considered "immaterial" and thus within the scope of paragraph (2) above quoted. This is evident considering not only the fact that the amount of the loss was 1/18th of the total purchase price, but, also, because the purchaser (plaintiff) was clearly purchasing the land for the purpose of constructing new buildings thereon. The purchase contract was conditioned upon obtaining a zoning variance, to allow construction of a motel and diner; the buildings on the property (and the one destroyed by fire) consisted of an old farmhouse, barns and other outbuildings.

The sole question remaining is, therefore, one of law. Defendant, in opposition to the motion, argues that as the insurance contract was personal to him, as the insured, a vendee such as plaintiff has no claim thereto, citing *Brownell* v. *Board of Educ.* (239 N. Y. 369) and *Rayner* v. *Preston* (1881) (18 Ch. D. 1). However, that argument overlooks section 240-a, and the fact that both *Brownell* and *Rayner* were decided prior to the enactment of that statute. Indeed, the decision in *Brownell*, particularly in its adherence to the *Rayner* rule, appears to have been a precipitating factor in the modification of the New York rule effected by section 240-a (see 1936 Report of N. Y. Law Rev. Comm., pp. 759, 767–773; *Heerdt* v. *Brand,* 272 App. Div. 143, 144–145). We are not here faced with a vendor obtaining insurance after execution of a contract of sale to protect him against loss arising out of acts which might cause frustration of the contract. To allow retention of the money, and to deny an abatement in these circumstances would effect, in substance, an unjust enrichment of the vendor-defendant who has received, as of this date, the bargained for purchase price *and* the insurance proceeds. This situation was contemplated by the Law Revision Commission in its study above cited. There it recommended modification of the Uniform Vendor and Purchaser Risk Act for, as stated at page 778 of said study: "There is no provision as

to the risk of loss of an ' immaterial ' or ' unsubstantial ' part of the subject matter under similar circumstances, thus leaving unchanged in this respect the present New York rule placing the burden of loss on the purchaser. Such loss although ' unsubstantial ' in the sense that it should not work a rescission of the contract, may be appreciable. Accordingly, provision should be made for allocating the burden of such loss to the vendor in possession by allowing the purchaser an abatement of the contract price to the extent of the loss.'' This recommendation was adopted in paragraph (2) of section 240-a.

Some question has been raised as to the amount of the recovery for, as aforesaid, defendant urges that it received only a net of $9,000 from the insurer. But no evidentiary proof of this has been adduced. Section 240-a speaks in terms of an abatement to the extent of the destruction. The sum which defendant accepted from the insurer in settlement of its claim is strong evidence but not conclusive proof of this amount. Accordingly, the motion will be granted, but the amount of the judgment must be fixed at a hearing, which hearing is directed, pursuant to CPLR 3212 (subd. [c]).